No. 19,536.

GRACE A. GRANBERRY, ET AL. *v.* BEN PERLMUTTER.

(364 P. [2d] 211)

Decided August 21, 1961.

Mr. MITCHEL B. JOHNS, Mr. FRANCIS S. MANCINI, for plaintiffs in error.

Mr. GEORGE J. DUCKWORTH, for defendant in error.

*In Department.*

Opinion by MR. JUSTICE DOYLE.

THE final judgment before us for review by writ of error was entered following a trial to the court in which the parties submitted their respective testimony and

theories as to the propriety of treating certain work performed by plaintiff (defendant in error in this Court) as "extras" properly allowable. The questions arose in an action to recover for work performed in the construction of an addition to defendants' home.

The basic agreement provided for the building of a two-story addition. It contemplated the destruction of the garage on the premises and the rebuilding of a cinder block structure having living rooms and bath above a double garage. The existing concrete floor was to be repaired and utilized and heat was to be furnished by the existing furnace, which was to be repaired.

This written contract was in letter form addressed to the defendants. It described the building to be constructed, described in some detail the specific work proposed by plaintiff, fixed a price of $9,000.00 and specified the terms of payment. This was supplemented by a sketch which furnished a picture of the structure together with room plan.

Following the completion of the work plaintiff submitted a bill for extras. These totalled $3,094.70 and included items too numerous to list in detail. Defendants took exception to a number of these extras involving total charges of $2,048.50. Others they agreed were proper charges. They further claimed that there was defective and uncompleted work whereby they had an offset amounting to $5,000.00.

Payments on the contract had been made during the course of the work with the exception of a final installment of $1,000.00. Accordingly the complaint demanded this final $1,000.00 item plus $3,094.70 comprising the described items. The judgment entered totalled $2,990.33. This reflected the allowance $1,650.60 of disputed extras, $1,000.00 owing on the contract, $963.05 undisputed extras less $623.07 damages and offsets due the defendants.

The trial court exhibited commendable patience in receiving and considering all of the evidence tendered

by the parties and in sifting it with respect to each item without regard to its pettiness. In view of this we are not disposed to review these determinations except in those few instances where true issues of law are presented.

In seeking reversal defendants claim that the trial court erred in allowing plaintiffs (1) the sum of $425.00 for tiling the floor and walls of the bathroom in view of plaintiff's agreement to build a bathroom. It is said that the tile wall and floor coverings are implicit in this undertaking and further that the agreement to furnish tile was express. (2) Defendants also complain about inclusion of the new concrete floor in the garage and (3) about the failure of the court to allow damages on account of failure to build the roof according to specifications.

Points (2) and (3) were decided on disputed evidence and can not therefore be disturbed. The court found that the new concrete slab was poured with the knowledge of plaintiffs and without protest on their part, and that they could not therefore complain.

Parol evidence, both pro and con, was offered concerning verbal modification of the agreement to furnish a certain type of roof. This was resolved favorably to the defendants and therefore even though we might determine it differently if we were deciding the issue, we can not justifiably disturb the trial court's finding.

Defendants' point (1) does, however, challenge our attention. The court's determination that tile in the bathroom was properly allowable as an "extra" is subject to review since it is based upon the court's view as to what a bathroom customarily includes.

The signed contract, dated October 3, 1958, and which was prepared by plaintiff, makes no mention of tile. It simply provides:

"BATHROOM:

"Colorado fixtures to consist of 1 closet, 1 basin, 1 bath with shower over tub."

. A version of the contract which was shown to Mrs. Granberry contained the additional notation:

"Ceramic tile floor and walls 4 ft. high and 4 ft. over tub."

We can not justifiably consider whether the discrepancy between the two writings resulted from mistake or bad faith but our view of this part of the transaction does not require us to resolve the question since the trial court decided it on a basis which we consider erroneous. The court ruled that:

"Of the bathroom, it seems to me, it is something extra that should be paid for by the Granberrys. A tile bathroom is not the ordinary bathroom. It is a kind of a luxury. It is nice to have them, but the ordinary bathroom you find, I think, in the ordinary house is not a tile bathroom; certainly not completely tiled, walls and floor. So the tiling of the bathroom is an allowable extra in my judgment."

■ Thus our decision turns on whether tile wall and floor coverings are to be considered properly incidental to the construction of a new bathroom. In other words, must the contractee bear the burden of including such a stipulation in a building contract, or must the contractor expressly exclude this type of item? A contractee in circumstances like the present must depend on and trust the contractor. The disparity of knowledge makes this necessary. Therefore the burden of clearing this type of ambiguity should be on the contractor.

■ When parties contract for a substantial addition, including a bathroom, it is fair to assume that appropriate walls and flooring are to be included. This situation is no different from that which obtains in the construction of a new house. Floor and wall finish, differing from that of other rooms, and generally of tile, is not a luxury in a bathroom. It goes without saying. Therefore, on this ground we conclude that this item should not have been allowed as an extra and to this limited extent the judgment must be reversed.

478

The judgment is reversed and the cause is remanded to the trial court with directions to deduct from the judgment the sum of $425.00 and to enter final judgment for the plaintiff in the lesser amount.

MR. CHIEF JUSTICE HALL and MR. JUSTICE MCWILLIAMS concur.